Good morning. We have four appeals that are scheduled for oral argument this morning. The first is the United States of America v. Xavier Brooks. Jessica Lee is here for the appellant Brooks. Stuart Walker is here for the United States. And Ms. Lee, you may begin your argument. Good morning, Your Honors. May it please the Court, Jessica Lee representing the appellant, Mr. Xavier Brooks, in this case. Mr. Brooks' Georgia robbery and eviction should not be qualified as a crime of violence because it is indivisible and subject to the charges of the hospital. The Harrison panel incorrectly held for Georgia robbery was divisible. I'm sorry, did you say the Harrison panel incorrectly? That is our position, Your Honor, that they have incorrectly held that Georgia robbery was divisible. The mandate issued in that case, correct? Yes, that is correct, Your Honor. So are we not bound by Harrison? We are, Your Honor. However, that is in regards to a robbery by intimidation. In this situation, Mr. Brooks' case is not clear as to which subsection of the robbery he was convicted of, Your Honor. But aren't we bound by the holding that it's divisible? I believe that because the Harrison panel did not adhere strictly to the math of steps, that they have incorrectly decided that decision, Your Honor, respectfully. Okay, but again, the mandate issued in that case, and we are bound by prior precedent. That is correct, Your Honor. Your strongest argument probably relates to the four-level enhancement because the crime possession of a firearm by a convicted felon is in connection with another felony offense, namely the theft by receipt of stolen property to Smith & Wesson. You should probably confine your argument to that issue. Yes, Your Honor. So in that situation, Your Honor, Mr. Brooks, he was convicted. They had—we believe that that was not the same course of conduct. The district court erred when it found that the second firearm that was found in the 2021 stop was the same course of conduct. However, based off of the time, three months had it separated between the actual first arrest and his second arrest, Your Honor. This was not—there was no evidence provided that the vehicle in question was the same vehicle in question in regards to the first stop that was alleged to have been involved in a murder, Your Honor. In addition, as well, the firearm is not the same type of firearm. I understand that the government's position is that because it's the same type of charge, that is part of the same course of conduct. However, there must be evidence of more of them connecting together, Your Honor. You would have to split with the Eighth Circuit and its decision in the United States versus Cantermore if we accepted your argument, wouldn't we? Yes, Your Honor. You're asking us to create a circuit split? Yes, Your Honor. Okay. And what's your best argument for the circuit split? Your Honor, that—the 11th Circuit has actually not ruled on this conclusively, Your Honor. I do believe that— We've ruled on it, but in an unpublished case. That's correct, Your Honor. There must be more evidence to show that this was more of the same course of conduct. The same course of conduct, there has to be a meeting of the minds. There has to be a pattern that's shown here, Your Honor. And I don't think that it's the same similar charge. May I ask you a question? You didn't file a reply brief, so do you object to the court taking judicial notice of the state court proceedings? We don't, Your Honor. Okay. So the four-level enhancement, I mean, your argument, if you want to continue with it, it's like double counting and the district court clearly erred in applying that four-level enhancement? Yes, Your Honor. The underlying case was a death by stolen—receiving property. It is our position that the firearm cannot be the actual in connection with, Your Honor. The firearm was what was stolen. It's not a separate offense. And typically, we see these kind of cases with possession of a firearm in a drug trafficking crime where the firearm facilitated the actual underlying crime. The firearm cannot facilitate the crime of it being a stolen property, Your Honor. And so that was the reason that we believe the district court erred in applying that four-level enhancement. Okay. Do you know what the status of Brooks' state prosecution for theft by receipt of stolen property is? It is still unadjudicated at this time. Okay. He has not actually—the last time I checked that, it was not necessarily even adjudicated. And so there are surrounding other issues involving that case, and I believe the state is going to dismiss that case ultimately. The prosecution has not been adjudicated on it. All right. If that's your argument, you've reserved some time. Thank you, Ms. Lee. We'll hear from the United States. Mr. Walker. Good morning, Your Honors, and may it please the Court. Stuart Walker on behalf of the United States. I'll pick up where the conversation left off with respect to the four-level enhancement for the felony offense, specific offense characteristic. To begin with, because it's a specific offense characteristic, under the relevant conduct provisions, you're directed to apply or to take into account any act or omission by a defendant that is part of the same course of conduct. And here the district court didn't err in concluding that the felony offense enhancement applied as part of the same course of conduct under the three factors that the guidelines lay out for what to look at to make that determination. Number one, courts are supposed to look at the similarity of the two acts. Number two, the regularity of the two acts. And number three, whether there's a short time interval between the two acts. And here on the question of similarity, the possession of the stolen firearm in January 2021 is identical conduct to the unlawful possession of the firearm in October 2020, just 14 weeks before for which he was prosecuted and pleaded guilty in this case. With respect to the time interval, only 14 weeks elapsed between these two, and we've cited a number of circuit decisions in our brief to suggest that intervals anywhere from 11 weeks up to 6 to 9 months. But how is it not double counting? Well, on that score, Your Honor, we have not understood the appellant to be making a double counting argument on appeal. Just to be clear about the record, they did make a double counting argument in their written objection in the district court, but they did not make a double counting argument in their opening brief and, of course, didn't file a reply brief. And we don't think that's fairly raised on appeal, but if I could address the merits of that, we think it's meritless, even if the court were to determine that it had been raised implicitly. And I would draw the court's attention to application note 4A under guideline 1B1.1. And what that says is where you have offense level adjustments that are for specific offense characteristics within the same guideline, those are to be applied cumulatively, parentheses, added together, closed parentheses, unless the guideline specifies that only the greater or greatest is to be used. So, in other words, we're looking at the specific offense characteristics under 2K2.1B, and we've got two enhancements here, the stolen firearm enhancement and the felony offense enhancement. Trying to figure out how the firearm can facilitate the theft by receiving stolen property if the gun is the stolen property in question. Yes, Your Honor. I'd like to come back to the question of double counting, but on this question I think is a discrete question, and that is whether or not it was used in connection with another felony offense. And the way the guidelines define the term in connection with is they say, as Your Honor pointed out, that the gun facilitates or has the potential for facilitating another felony offense. Yeah, that's what we said in Bishop, in United States v. Bishop. But the importance is the emphasis on the word facilitating is significant. And then we later said that we clarified that facilitate involves considering the weapon's potential use as a weapon. And just based on those statements and our prior opinions, I'm having a hard time understanding how that enhancement could be supported in this case. Yes, Your Honor. Two points on that, if I might. The ordinary meaning of the word facilitate, and I've looked this up in half a dozen dictionaries, is to make something easier. And here our position is that his possession of the stolen firearm didn't just make it easier to commit the other felony offense under Georgia law, it made it possible. In other words, without possessing the stolen firearm, he could not have been charged under Georgia law with death by stolen property. And the best case that I can cite to the Court for that proposition is the Supreme Court's decision in Smith v. United States, 1993. That's where the facilitate or potential to facilitate language comes from in the guidelines. The guidelines in 2006 were amended to adopt the language in Smith to facilitate the potential to facilitate another offense. And in that case, it involved the use of a gun in a drug transaction, but not the use of the gun for protection or discharge or anything like a typical use of a gun. The gun was used as a means of barter in the drug transaction. And what the Supreme Court said is more than merely facilitating another offense, it was an integral part of the transaction. Without the gun, the transaction would not have happened. And so sort of by parity of reasoning, what we're saying here is that without the possession of the stolen firearm, this theft by receiving stolen property charge would not have happened. And that's the Supreme Court's reasoning in Smith where we get the facilitation language in the guidelines. And so for that reason, our position is and has been that Mr. Brooks used the firearm in connection with another felony offense. Why doesn't that merge into the double-counting argument? Because although making the offense possible is certainly more integral to the offense, isn't that still somewhat different than facilitating the offense? Do you see the slight difference that may be there? I guess I do see your point that typically we wouldn't say to make something possible is to facilitate it. I guess I would just say that to make it possible means that it's an even stronger ground in facilitation than to make it easier. But on the double-counting score, again, so I would draw the court's attention to the guideline commentary that says we assume that multiple specific offense characteristics within the same guideline are to be applied cumulatively unless there's an explicit direction in the guideline that they're not to be. The appellant has not cited to any, and we have found no explicit instruction not to apply them cumulatively, number one. Number two, that principle is consistent with the court's own case law that says we presume the commission intended to apply separate guideline sections cumulatively unless specifically directed otherwise. This all gets to whether there even can be such a thing as double-counting, even if there are ambiguities in the language which might lead you to think that it is odd. And we're not here to say to the court this is a heartland application or a mine-run application of these two enhancements, but we do think they're supported by the text of the provision which just says was it possessed or used or possessed, but here is it possessed in connection with another felony offense. And then finally, the analysis, double-counting analysis, sometimes takes into account whether it's punishing for the same harm. And here, the Eighth Circuit in Cantermore rejected the argument that application of the stolen firearm enhancement and the felony offense enhancement resulted in double-counting because the firearm enhancement and the felony offense enhancement get at two separate harms. The stolen firearm enhancement gets at just the mere characteristic of the gun. The defendant doesn't have to know or have reason to know that it was stolen. And the felony offense enhancement gets at what is being done with the firearm. And so they don't punish the same harm. And Cantermore cited to an earlier Eighth Circuit case called Kenny, which I will call to the Court's attention because it sort of explicates why these don't punish for the same harm. So we don't think the double-counting argument has been sufficiently raised on appeal, but even if so, we think it's meritless under the commentary, under the presumption that there to be— I mean, it was really at sentencing. The government even acknowledged way back at sentencing that there was an unfair sort of application of the enhancement, which is why the government requested a two-level downward variance. The government did ask the court to vary downward from the guideline range, but I want to be very clear about this. The government was saying that, of course, the district court has an obligation to correctly calculate the sentencing guideline range, and the government has an obligation to make sure that the district court does so with as robust a record as it can. And so the government never took the position that these were not to be applied at the same time because it's double-counting. We just said to ameliorate the potential perceived unfairness of this, and that's exactly what the Eighth Circuit, the district court in Cantermore that resulted in the Eighth Circuit's decision did. And so Cantermore was sort of the government's blueprint here for how to handle this. Both of the enhancements applied correctly under their own terms. It didn't result in double-counting. Had they been double-counting, then they couldn't have both been applied and the guidelines calculation would have been miscalculated, resulting in procedural error. It wasn't procedural error to apply them both, although the government recognized that this is not sort of the heartland application of these, and in respect to that, we asked for a variance which the district court granted. We may be bound by Harrison, but we're not necessarily bound by Cantermore. That's correct, Your Honor. I mean, we cite Cantermore for the strength of its persuasive value, but not just Cantermore. If Cantermore didn't exist, we'd be making the same argument, but it's because we think it's textually supported in light of the guideline language, the definitions we discussed this morning, and this court's jurisprudence about presumptions, about cumulative applications of guideline provisions. If I might turn back to the crime of violence issue, Your Honor, we've asked the court to take judicial notice of the plea colloquy transcript for Mr. Brooks. Your colleague on the other side has already said she has no objection to that. Yes, Your Honor. That leads, then, to the second question. Because we're dealing with the divisible statute, which Harrison holds, then we have to apply the modified categorical approach and see what Mr. Brooks was, in fact, convicted of. We submit that the guilty plea colloquy transcript shows that he pleaded guilty necessarily to use of force violence under Georgia's robbery statute. I mean, I'm sorry, use of force robbery under subsection A1 of Georgia's robbery statute. He confirmed the factual basis for the plea, and he assented to the prosecutor's statement that he took $20 from Bill Abercrombie by using force. So we think it's clear that he necessarily pleaded guilty to use of force robbery. The final question then becomes, applying the traditional categorical approach, whether use of force violence, I'm sorry, use of force robbery under A1 is a crime of violence under either the elements clause of the career offender provision or the enumerated offenses clause. And we think it qualifies as a crime of violence under both. Is that because it was an armed robbery involving the use of a knife and a handgun? That's what he was originally indicted for, Your Honor, under count one of the indictment. What he actually pleaded to was a lesser included offense, which was use of force robbery under a separate statute. And the reason that it qualifies under the elements clause is because under Georgia law, use of force robbery has as an element the use, attempted use, or threatened use of physical force against the person of another. I would cite to the court the U.S. Supreme Court decision in Stokeling in 2015, which addressed Florida's use of force robbery statute under the Armed Career Criminal Act, in particular under ACCA's elements clause, which is identical to the career offender elements clause. And the Supreme Court there held that use of force robbery that requires physical force sufficient to overcome resistance by the victim, however slight, which is identical to Georgia's required use of force, that qualifies as a violent felony under ACCA under the elements clause. This court recently in Harrison, footnote one, applied Stokeling to the Florida use of force robbery under the guidelines under the elements clause, saying that because the elements clauses were identical, then Stokeling's analysis controlled. What we're asking this court for is to hold that Georgia's use of force robbery qualifies as a crime of violence under the elements clause of the career offender provision, just like Harrison held with respect to Florida use of force robbery. But there's more than that. It also qualifies as a crime of violence under the enumerated offenses clause. And the court need look no further than Harrison to support that conclusion. That's because use of force robbery under Georgia law is narrower than the elements of generic robbery. As this court held in Lockley in 2011, the elements of generic robbery are the taking of property from the person of another by intimidation or by force. Then necessarily use of force robbery is narrower than that, just as robbery by intimidation in Harrison was narrower than the generic elements or the elements of generic robbery. So we think it qualifies under both parts of the career offender provision as a crime of violence. And then finally, with respect to the application of the stolen firearm enhancement, I would just add that it too depends on a finding of the same course of conduct and for the same reasons that the district court didn't err in applying the felony offense enhancement as the same course of conduct, the district court did not err in applying the two-level enhancement for the stolen firearm. And because the district court made no errors of law and because of its factual findings are not clear error, which is the standard that we're here reviewing for, because there were no clearly erroneous facts underlying its judgment, we would ask that Mr. Brooks' sentence be affirmed. All right. Thank you, Mr. Walker. And Ms. Lee, you've reserved some time for rebuttal if you'd like to use it. Yes, Your Honor. Thank you. May it please the Court. To go back to the four-level enhancement, Your Honor, there is the Fourth Circuit case in Blount, which exemplifies that 2K2.1, in order for the four-level enhancement to apply, the firearm must be possessed in connection with another separate felony offense. The firearm itself cannot be the felony offense. Wasn't that case before the new application note to the guidelines? Yes, it was, Your Honor. However, I think the crux of the argument is still that there must be a separate offense in this situation, Your Honor. There must be more evidence provided. There was nothing provided in the district court that that firearm itself had facilitated a separate felony offense in this case. We do believe that it is double-counting, while we may not have argued that in the initial brief, Your Honor, because the district court, when they applied the two-level enhancement for the stolen firearm, already took that into account. For them to add another four-level to increase Mr. Brooks' guidelines based off of the same stolen firearm is impermissible double-counting, in our opinions, Your Honor. How do you deal with that application note, given your argument? Your Honor, I don't believe this is the same course of conduct. I don't believe that there is enough to prove that those two firearms are a part of relevant conduct. It was not included in his indictment. This was not included in his plea agreement as well, the second firearm. And so, Your Honor, I believe that those two firearms, the fact that it was unindicted, the second firearm should not have been counted, Your Honor. Is it contradictory to say, on the one hand, it's double-counting because it's counting twice for the same thing, and then, on the other hand, to say it's not even the same course of conduct? I don't believe so. The fact that it's not the same course of conduct, meaning that it cannot be included as relevant conduct, Your Honor. I don't believe that the second firearm can be used to show the same type of harm in this situation. And to also address the government's position in regards to Mr. Brooks' Georgia robbery convictions, based off the Shepard documents that were provided by the government and as well as the transcript, we do believe that it is still unclear whether or not which type of robbery Mr. Brooks had pled to. Ultimately, the plea policy states that Mr. Brooks had taken the $20 from Mr. Abercrombie by using force. However, as the courts have noted, that he was originally indicted for possession with a knife and a firearm. In the plea colloquy, one of the Shepard documents? It is, Your Honor. But it is very possible that the force required does not rise to the requisite level of force required by the guidelines. It is possible that, based off of the – when we don't have more information in the situation, that this could have been a robbery by sudden snatching. It could have been a robbery by intimidation. All of those were lesser included. The actual judgment does not show which subsection he pled to. And so based off of the fact that the Shepard documents are not clear as to exactly which subsection he pled to, we cannot assume that he pled to robbery by force exactly. It could have been a different lesser included crime under robbery, under 16-8-40, Your Honors. And so for those reasons, we do believe that his robbery conviction should not count as a crime of violence. Thank you. All right. Thank you, Ms. Lee and Mr. Walker.